UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SERENGETI EXPRESS, LLC,

Plaintiff,

-against-

JP MORGAN CHASE BANK, N.A.,

Defendant.
-----------------------------------------------------------x

19-cv-5487 (PKC)

OPINION
AND ORDER

CASTEL, U.S.D.J.

Plaintiff Serengeti Express, LLC ("Serengeti") brings this action against JP Morgan Chase Bank, N.A. ("Chase") alleging that Chase permitted an unauthorized individual to remove funds from a deposit account Serengeti held with Chase and seeking $300,000 in damages. Chase moves to partially dismiss the Second Amended Complaint ("SAC"), (Doc. 26), under Rule 12(b)(6) for failure to state a claim. For the reasons that follow, the Court will grant defendant's partial motion to dismiss.

BACKGROUND

Serengeti is a limited liability corporation with three members, Kevin Platt, Hamilton Caranda Martin, and Celia Chanu. (SAC ¶¶ 8, 13). During the relevant period, Serengeti operated a restaurant in Harlem, New York named the Serengeti Kitchen. (SAC ¶ 1). On March 31, 2017, Serengeti, through Platt and Martin, opened a deposit account (the "Deposit Account") at Chase branch in New York to assist in the operation of the Serengeti Kitchen. (SAC ¶ 13). The Deposit Account was governed by a deposit account agreement between Chase and Serengeti (the "Deposit Account Agreement"). (SAC ¶ 14). Platt and Martin were the only authorized signatories for the Deposit Account at its opening. (SAC ¶ 14).

In the summer of 2017, Chris Chea invested in the Serengeti Kitchen, but did not become a member of Serengeti and was not added as an authorized signatory to the Deposit Account. (SAC ¶ 16). On November 3, 2017, Chea, with the assistance of Chase branch manager Robert Elderman, added himself as an authorized signatory to the Deposit Account and removed Platt as an authorized signatory. (SAC ¶¶ 17–18). In adding Chea to the Deposit Account and removing Platt, Chase did not receive the proper forms or the consent of a current signatory as required by the terms of the Deposit Account Agreement. (SAC ¶¶ 19–22).

Between December 4, 2017 and April 17, 2018, Chea transferred $13,822.08 from the Deposit Account to accounts which he solely controlled. (SAC ¶¶ 29, 40, 48). Platt and Martin complained to Chase about Platt's removal, Chea's access to the account, and Chea's transfers. (SAC ¶¶ 25–26, 30, 40). Chase stated that it would look into Platt and Martin's complaints, but, despite knowledge of the issues, Chase never removed Chea's access, restricted Chea's movement of funds, or refunded any of Chea's unauthorized transfers. (SAC ¶¶ 32, 41). As a result of Chea's unauthorized withdrawals of funds, Serengeti Kitchen lacked "the capital necessary to place orders for supplies, make payroll and keep employees needed to keep the restaurant running during its crucial and its busiest seasons, spring and summer." (SAC ¶ 34). But for Chea's unauthorized withdrawals, Serengeti Kitchen "would have had the chance to thrive and generously profit all involved." (SAC ¶ 49). Instead, it "suffered severe economic harm" and "was unable to continue to operate as a going concern." (SAC ¶ 42).

RULE 12(B)(6) LEGAL STANDARD

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the

presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual allegations, which are accepted as true, and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 678–79.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

"[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'"  Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).  A court reviewing a Rule 12(b)(6) motion "does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule."  Id.  A court may, however, "consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'"  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (first alteration in original) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

DISCUSSION

Based on Chea's improper addition as an authorized signatory to the Deposit Account and his withdrawal of funds from that account, Serengeti brings a breach of contract claim and a gross negligence claim against Chase.  (SAC ¶¶ 43–61).  Serengeti seeks $300,000 in damages from Chase, of which $13,822.08 is the amount of Chea's unauthorized withdrawals and the balance is lost profits due to the resulting closure of Serengeti Kitchen.

Chase's motion seeks dismissal of the gross negligence claim in its entirety and the breach of contract claim only insofar as lost profits or other forms of consequential damages are sought. In support of its motion, Chase submitted a signed declaration and accompanying exhibits. In deciding this motion, the Court has considered Exhibit 1 to the Declaration of Laura L. Deck, which is a complete copy of Chase's Deposit Account Agreement that was in effect as of March 12, 2017. (Doc. 29-1). This Deposit Account Agreement, which forms the basis of Serengeti's breach of contract claim, is incorporated into the Second Amended Complaint or is a document upon which Serengeti relied in bringing suit, so may properly be considered on a motion to dismiss. Stratte-McClure, 776 F.3d at 100.

The parties agree that New York law governs Serengeti's claims and the parties' mutual reliance on New York law functions as implied consent to the application of New York law.[1] Zoll v. Jordache Enterprises, Inc., No. 01-cv-1339 (CSH), 2002 WL 31873461, at *5 (S.D.N.Y. Dec. 24, 2002) ("Where a claim arguably touches other jurisdictions, but the parties cite cases from and rely on the law of the forum jurisdiction and do not dispute application of the law of the forum jurisdiction, their conduct may be taken as a stipulation that the law of the forum applies." (citing Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984)); see also Tehran-Berkeley Civil & Envtl. Engineers v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989) ("The parties' briefs, however, rely on New York law. Under the principle that implied consent to use a forum's law is sufficient to establish choice of law, we will apply New York law to this case." (internal citation omitted)).

[1] Even in the absence of such implied consent, New York law would still apply due to a choice-of-law provision in the Deposit Account Agreement. Specifically, the Deposit Account Agreement states that "[t]his agreement, all accounts and services provided to you, and any dispute relating to those accounts and services are governed by . . . the law of the state where your account is located," which the Deposit Account Agreement defines as the state in which the account was opened. Deck Decl., Ex. 1 at 14. As the Deposit Account was opened in New York, (SAC ¶ 13), this choice-of-law provision mandates the use of New York law. Ministers & Missionaries Benefit Bd. v. Snow, 26 N.Y.3d 466, 470 (2015); Krock v. Lipsay, 97 F.3d 640, 645 (2d Cir. 1996).

I. Serengeti's Gross Negligence Claim Will Be Dismissed.

Serengeti argues that, by not removing Chea as an authorized signatory over the Deposit Account and not refunding Chea's unauthorized withdrawals upon notice, Chase failed in its common law duty of care to protect the Deposit Account. (SAC ¶¶ 52–61). This alleged gross negligence resulted in the loss of $13,822.08 through Chea's unauthorized withdrawals and ultimately caused the Serengeti Kitchen to close. Because Serengeti has failed, as a matter of law, to establish that Chase, its contractual counterparty, owed it a duty of care, the Court will dismiss Serengeti's gross negligence claim.

"To establish a prima facie case of negligence under New York law, three elements must be demonstrated: (1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998) (citing McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. 1997)); see also Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325 (1981). Gross negligence further requires "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." Curley, 153 F.3d at 13 (quoting AT & T Co. v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996)); see also Purchase Partners, LLC v. Carver Fed. Sav. Bank, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012).

Under New York law, the requisite duty of care must arise independently of any underlying contract. Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract."); Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank, 552 Fed. App'x 13, 19 (2d Cir. 2014) ("'Claims for gross negligence [and] willful

misconduct sound in contract rather than tort' where, absent a contractual agreement, the defendant 'would have had no duty to plaintiffs.'" (alternation in original) (quoting OFSI Fund II, LLC v. Can. Imperial Bank of Commerce, 920 N.Y.S.2d 8, 10 (1st Dep't 2011))).

In establishing the Deposit Account, Serengeti entered into a contract, the Deposit Account Agreement, with Chase. Further, under New York law, such a relationship between a bank and its depositor is deemed contractual. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chem. Bank, 57 N.Y.2d 439, 444, 442 N.E.2d 1253 (1982) ("[T]he underlying relationship between a bank and its depositor is the contractual one of debtor and creditor, implicit in which is the understanding that the bank will pay out its customer's funds only in accordance with the latter's instructions."); Middle E. Banking Co. v. State St. Bank Int'l, 821 F.2d 897, 901 (2d Cir. 1987) ("It is well established under New York law that the relationship between a bank and its customer for whose account funds have been deposited 'is that of debtor and creditor, with all the legal implications that relationship connotes.'" (quoting Solicitor for the Affairs of His Majesty's Treasury v. Bankers Trust Co., 304 N.Y. 282, 291 (1952))). As such, Serengeti's allegation that Chase permitted unauthorized withdrawals from the Deposit Account implicates the explicit and implicit obligations of the parties under the Deposit Account Agreement rather than any independent legal duty. Hartford Acc. & Indem. Co. v. Am. Exp. Co., 74 N.Y.2d 153, 164 (1989) ("A bank and its depositor have the contractual relationship of debtor and creditor, with an implicit understanding that the bank will pay out a customer's funds only in accordance with its instructions."); Middle E. Banking Co., 821 F.2d at 901–02 ("Because of this relationship, a bank is bound by an implied contract, under which it holds the deposit to be disbursed only in conformity with the customer's instructions and only upon the customer's order." (internal citations omitted)).

Absent the Deposit Account Agreement, Chase would owe no duty to Serengeti and Serengeti fails to establish any such independent duty. Instead, at base, Serengeti's gross negligence claim seeks to enforce a contractual bargain by other means. Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 551 (1992) ("A tort may arise from the breach of a legal duty independent of the contract, but merely alleging that the breach of contract duty arose from a lack of due care will not transform a simple breach of contract into a tort." (citing Clark–Fitzpatrick, Inc., 70 N.Y.2d at 389)). Serengeti has failed to establish a necessary element of its claim, namely that it was owed a duty of care by Chase that is independent from Chase's contractual obligations. Therefore, the gross negligence claim will be dismissed.

II. Serengeti Will Be Barred from Seeking Consequential Damages on Its Remaining Breach of Contract Claim.

Chase also seeks to dismiss Serengeti's claims to the extent they seek consequential damages. Chase argues that Serengeti is limited to the $13,822.08 directly attributable to the unauthorized withdrawals from the Deposit Account under the terms of the Deposit Account Agreement and under New York law. Serengeti accepts Chase's characterization of the majority of its claimed damages as consequential and does not dispute the terms of the Deposit Account Agreement. However, Serengeti asserts that New York law renders the Deposit Account Agreement's limitation on liability unenforceable in the face of Chase's gross negligence. Based on the terms of the Deposit Account Agreement and New York law, the Court will dismiss the requested relief of consequential damages on Serengeti's breach of contract claim.

Serengeti is a small, reasonably sophisticated business that entered into a contract, the Deposit Account Agreement. Prominently in bold-faced capital letters and using easily understood language, the Deposit Account Agreement bars consequential damages stemming from any dispute related to the Deposit Account, stating:

> **WE [i.e. CHASE] WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IF WE FAIL TO STOP PAYMENT ON AN ITEM, OR PAY AN ITEM BEARING AN UNAUTHORIZED SIGNATURE, FORGED SIGNATURE, OR FORGED ENDORSEMENT OR ALTERATION, OUR LIABILITY, IF ANY, WILL BE LIMITED TO THE FACE AMOUNT OF THE ITEM.**

Deck Decl., Ex. 1 at 14.  The parties do not dispute that this provision of the Deposit Account Agreement governs Serengeti's breach of contract claim and that this provision bars consequential damages.  Instead, Serengeti argues that this provision is unenforceable in light of Chase's alleged gross negligence in permitting unauthorized access to the Deposit Account.

This contractual bar on consequential damages is valid and enforceable under New York law.  Sommer, 79 N.Y.2d at 553 ("Absent a statute or public policy to the contrary, a contractual provision absolving a party from its own negligence will be enforced."); Daily News, L.P. v. Rockwell Int'l Corp., 680 N.Y.S.2d 510, 510 (1st Dep't 1998) ("Plaintiff's breach of contract claim seeking consequential damages was properly dismissed since the parties' contract, which we deem to be enforceable in relevant part since there has been no showing of unconscionability, limits the remedies available thereunder and expressly excludes as a remedy the recovery of consequential damages.").  Serengeti argues that Chase's gross negligence renders the provision limiting damages unenforceable.  However, the Court has already dismissed Serengeti's gross negligence claim, finding that Serengeti failed to demonstrate that Chase owed a duty independent of the Deposit Account Agreement.  As such, Serengeti cannot rely on Chase's allegedly grossly negligent performance under the Deposit Account Agreement to invalidate a provision of that agreement and extract consequential damages on its breach of contract claim. City of New York v. 611 W. 152nd St., Inc., 710 N.Y.S.2d 36, 38 (2000).

Further, even if Serengeti established gross negligence, it could not satisfy the threshold to overcome a contractual limitation on liability agreed to by sophisticated parties. New York law requires, in cases not involving health or safety, that plaintiff demonstrate "intentional wrongdoing" or "a reckless indifference to the rights of others" to overcome an explicit contractual limitation on liability. Sommer v. Fed. Signal Corp., 79 N.Y.2d at 554. The conduct alleged in the Complaint does not rise to level of "intentional wrongdoing" or "a reckless indifference to the rights of others" sufficient to render the explicit terms of the Deposit Account Agreement unenforceable.

The Court will dismiss Serengeti's request for consequential damages on its breach of contract claim.

CONCLUSION

Defendant's partial motion to dismiss the Second Amended Complaint is GRANTED. The Clerk is directed to terminate this motion. (Doc. 27).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
May 7, 2020